UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GREAT AMERICAN ASSURANCE
COMPANY, a foreign corporation,

       Plaintiff,

v.                     Case No. 8:10-cv-2568-T-33AEP

SANCHUK, LLC, a Florida
corporation, and CHUCK ELLIOTT,
a Florida citizen,

       Defendants.
_____/


SANCHUK, LLC, a Florida
corporation, and CHUCK ELLIOTT,
a Florida citizen,

       Counter-Plaintiffs,

v.

GREAT AMERICAN ASSURANCE
COMPANY, a foreign corporation,
and WELLINGTON F. ROEMER
INSURANCE AGENCY, INC., a
foreign corporation,

       Counter-Defendants.

_____/

**ORDER**

This matter comes before the Court pursuant to Counter-Plaintiffs' Dispositive Motion for Partial Summary Judgment on Issue of Agency of Wellington Roemer Insurance, Inc. (Doc. # 91), filed on May 29, 2012. Counter-Defendant Great American Assurance Company filed its Response in Opposition (Doc. # 99)

on June 15, 2012. Also before this Court is Great American's Motion for Summary Judgment (Doc. # 96), filed on May 29, 2012. Defendants/Counter-Plaintiffs Sanchuk, LLC and Chuck Elliott filed their Response (Doc. # 100) on June 18, 2012. Great American filed a Reply, with leave of Court, on June 27, 2012. (Doc. # 106).

For the reasons that follow, the Court denies both Motions.

I.  **Background and Procedural History**

Sanchuk, LLC is a Florida corporation engaged in hauling paint for Sherwin Williams under a lease agreement. Sanchuk is solely owned by Sandra Rodholm. Chuck Elliott worked for Sanchuk as an independent contractor, driving the company's 2006 Volvo tractor. (Doc. # 95, Rodholm Dep. at 14-15).

In November 2009, Chuck Elliott contacted Kim Kastel of Wellington F. Roemer Insurance Agency, Inc. to obtain an insurance quote and begin the process of binding a policy on the 2006 Volvo tractor. (Doc. # 92, Kastel Dep. at 13). Rodholm signed the insurance application on December 11, 2009. (Id., Ex. 2 at 22-24). Rodholm subsequently signed a form electing $1 million in non-stacked uninsured motorist (UM) coverage. (Id. at 27-28). Great American issued a Non-Trucking Liability and Physical Damage insurance policy to Sanchuk,

-2-

Policy No. GTP9229665-00 (Doc. ## 96-8, 96-9, the "Policy"), with coverage effective December 24, 2009. The Policy provided $1 million in UM coverage at a premium of $10 a month. (Doc. # 96-8 at 2).

This dispute arises from a trucking accident that occurred on August 17, 2010. (Doc. # 1 at ¶ 9). Elliott, who was operating the 2006 Volvo tractor "under load," was injured in the accident and sought UM coverage under the Policy. (Id. at ¶ 11). Great American denied coverage based upon an alleged Trucking or Business Use exclusion. Great American then filed suit on November 16, 2010, seeking declaratory judgment that it is not obligated to provide Elliott with UM coverage. (Id.)

Sanchuk and Elliott filed a Counterclaim (Doc. # 9) on April 18, 2011, and an Amended Counterclaim (Doc. # 22) on June 23, 2011. Sanchuk and Elliott asserted five counts against Great American: Policy reformation (Count I), promissory estoppel (Count II), oral contract (Count III), uninsured motorist benefits (Count IV) and attorney's fees (Count VI). The Amended Counterclaim also asserted negligent failure to procure insurance coverage against Wellington F. Roemer Insurance Agency, Inc. (Count V). Sanchuk and Elliott allege that Elliott told Kastel he only drove the 2006 Volvo tractor under load, and Kastel represented that UM coverage would protect him during business use of the vehicle. (Id. at

-3-

¶¶ 16-17). As such, Sanchuk and Elliott argue that the business use exclusion is not enforceable. Alternatively, they argue that Roemer breached its duty to acquire a policy providing the insurance coverage they requested.

Roemer filed a Motion to Dismiss the Amended Counterclaim (Doc. # 24) on July 5, 2011, and Great American filed a Motion to Strike and Renewed Motion to Dismiss (Doc. # 32) on July 17, 2011. On January 23, 2012, this Court entered an order (Doc. # 61) granting Roemer's Motion to Dismiss and dismissing Count V without prejudice. The Court also granted Great American's Motion to Dismiss as to Count III of the Amended Counterclaim. Great American's Motion was otherwise denied.

Great American filed its Answer and Affirmative Defenses (Doc. # 75) on March 20, 2012. On March 28, 2012, Sanchuk and Elliott moved to strike Great American's Answer and Affirmative Defenses as untimely and insufficient as a matter of law. (Doc. # 77). On May 10, 2012, the Court granted the motion to strike as to Great American's first and second affirmative defenses but otherwise denied the motion. (Doc. # 90).

## II. **Legal Standard**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

-4-

and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing there is a genuine issue for trial. See id.

III. **Sanchuk and Elliott's Motion**

Sanchuk and Elliott move for partial summary judgement as to the issue of the agency relationship between Great American

-5-

and Roemer (Doc. # 91). Sanchuk and Elliott assert that Kastel "acted with actual and apparent authority on behalf of Great American" and that "Roemer is the agent for Great American for purposes of all transaction[s] arising out of the insurance coverage issues herein." (Doc. # 91 at 2). As a result, Sanchuk and Elliott contend that "Great American is bound by the representations of Roemer and Roemer's knowledge as to the transactions with Sanchuk is imputed to Great American." (Id.).

"Three elements are needed to establish apparent agency: (1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance upon such representation." Lensa Corp. v. Poinciana Gardens Ass'n, Inc., 765 So. 2d 296, 298 (Fla. 4th DCA 2000). "The reliance of a third party on the apparent authority of the principal's agent must be reasonable and rest in the actions of or appearances created by the principal and not by agents who often ingeniously create an appearance of authority by their own acts." Blunt v. Tripp Scott, P.A., 962 So. 2d 987, 989 (Fla. 4th DCA 2007) (internal quotations and citations omitted).

"The general rule is that an independent agent or broker acts on behalf of the insured rather than the insurer." Steele v. Jackson Nat. Life Ins. Co., 691 So. 2d 525, 527 (Fla. 5th

-6-

DCA 1997). However, "an independent insurance agent can be the agent of the insurance company for one purpose and the agent of the insured for another." Id. Furthermore, the Florida Supreme Court has held that Section 626.342(2) of the Florida Statutes, as well as Florida common law, can impose civil liability upon insurers "who cloak unaffiliated insurance agents with sufficient indicia of agency to induce a reasonable person to conclude that there is an actual agency relationship."[1] Almerico v. RLI Ins. Co., 716 So. 2d 774, 783 (Fla. 1998).

Sanchuk and Elliott argue that Roemer employee Kastel provided an application for insurance on Great American letterhead listing Roemer as the "agent" for Great American. (Doc. # 92, Kastel Dep., Ex. 2 at 22). She provided no

---

[1] Section 626.342(2) states in pertinent part:

Any insurer . . . who furnishes . . . supplies . . . to any agent or prospective agent not licensed to represent the insurer and who accepts from or writes any insurance business for such agent or agency shall be subject to civil liability to any insured of such insurer to the same extent and in the same manner as if the agent or prospective agent had been appointed, licensed or authorized by the insurer ro such agent to act in its or his behalf.

Such "supplies" include "blank forms, applications, stationery and other supplies to be used in soliciting, negotiating, or effecting contracts of insurance." Fla. Stat. § 626.342(1).

-7-

additional applications for any other insurance company. (Doc. # 97, Elliott Dep. at 42-43). Indeed, the Great American policy was the only one Roemer offered to leased operators such as Sanchuk. (Doc. # 93, Clinton Dep. at 13-14). Once Roemer takes the application and binds the policy, those documents are submitted to Great American electronically and the policy is issued automatically. (Id. at 12). Great American trains the staff of agencies such as Roemer on policy and coverage descriptions and underwriting guidelines. (Id. at 12-13). Sanchuk and Elliott contend that these factors constitute sufficient indicia of agency such that they would reasonably conclude that there was an agency relationship between Roemer and Great American.

Great American asserts that Elliott contacted Kastel in order to obtain insurance. (Doc. # 97, Elliott Dep. at 39). After reviewing the policy, Elliott saw that the UM coverage was incorrect and asked Kastel to increase the limit to $1 million. (Doc. # 92, Kastel Dep. at 53). Elliott requested information about occupational accident coverage (which would have covered the accident at issue) but decided not to purchase it. (Id. at 27-28). Elliott also requested that his brother be added as a driver and that the application be amended to reflect Sanchuk as the insured (Id. at 14-15).

-8-

Great American argues that this two-month process shows that Kastel was working as Sanchuk and Elliott's agent, helping to ensure they obtained the exact policy they wanted. Great American further argues that Sanchuk and Elliott have failed to provide any evidence that they changed their position in detrimental reliance on the alleged apparent agency.

Drawing all inferences from the evidence in the light most favorable to Great American, as the nonmoving party, the Court finds that there are genuine issues of material fact as to the alleged agency relationship between Roemer and Great American. Furthermore, "[t]he existence of an agency relationship is normally one for the trier of fact to decide." Villazon v. Prudential Health Care Plan, Inc., 843 So. 2d 842, 853 (Fla. 2003). The Court therefore denies Sanchuk and Elliott's Motion for partial summary judgment on this issue.

## IV.   **Great American's Motion**

Great American moves for summary judgment as to all counts of Sanchuk and Elliott's Amended Counterclaim. Great American asserts that Sanchuk's trailer was under load at the time of the accident, thus the Policy's business use exclusion precludes Elliott's UM claim. Great American further argues

that Sanchuk and Elliott have failed to adequately support their claims for promissory estoppel and policy reformation.

## A.   UM Coverage and Alleged Policy Ambiguity

The Amended Complaint rests on equitable claims for promissory estoppel and policy reformation. Nevertheless, Great American argues that the unambiguous language of the Policy excludes coverage for any accident that occurs while the covered vehicle is being used to transport cargo. Great American cites several extra-jurisdictional cases for the proposition that courts have found similar business-use exclusions to be unambiguous and enforceable.

"Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties. Ambiguities are interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy." Prudential Prop. & Cas. Inc. Co. v. Swindal, 622 So. 2d 467, 470 (Fla. 1993). This Court may not "rewrite a contract of insurance, extending the coverage afforded beyond that plainly set forth in the insurance contract." AAA Life Ins. Co. v. Nicolas, 603 So. 2d 622, 623 (Fla. 3d DCA 1992). The problem in this instance is that Sanchuk and Elliott are suing Great American not under the terms of the Policy but

pursuant to equitable theories of promissory estoppel and policy reformation.

In their Response, Sanchuk and Elliott contend that the Policy is indeed ambiguous. They assert that the business exclusion under Part II of the Policy (Doc. # 96 at 9) does not specifically state that it applies to UM claims. Furthermore, they argue that the UM endorsement is not subject to the exclusions under Part III of the Policy, and that the UM endorsement (Doc. # 96-9) does not reference the business use exclusion.

In its Reply (Doc. # 106), Great American asserts that Sanchuk and Elliott have raised the issue of Policy ambiguity for the first time in their Response; therefore, the Court should not consider this theory. In addition, Great American argues that Sanchuk and Elliott have waived their right to assert the ambiguity argument. In their response to Great American's Motion to Strike and Renewed Motion to Dismiss, Sanchuk and Elliott stated that "UIM benefits is the relief sought under a variety of [equitable] theories . . . . It is not the literal written policy for which Sanchuk seeks enforcement; it is the alternative theories that allow enforcement of the UIM coverage." (Doc. # 33 at 17).

-11-

Sanchuk and Elliott argue that the alleged Policy ambiguity supports their claims for policy reformation and promissory estoppel, discussed below. They claim that their understanding of the Policy provisions and the alleged representations made by Kastel relate to the issues of mistake and detrimental reliance.

The Court declines to grant summary judgment based upon interpretation of the Policy language when Sanchuk and Elliott are asserting equitable claims. The Court will, however, consider these arguments insofar as they relate to Sanchuk and Elliott's reasonable belief as to coverage and assertions as to mutual mistake.

**B.    Promissory Estoppel**

Great American argues that Sanchuk and Elliott have failed to establish their claim for promissory estoppel. Great American asserts that Kastel did not represent that Sanchuk had UM coverage while under load, and that Sanchuk and Elliott could not reasonably believe the Policy provided such coverage. Great American further argues that Sanchuk and Elliott cannot establish detrimental reliance.

"The general rule is that estoppel may not be invoked to enlarge or extend the coverage specific in an insurance contract." Solar Time Ltd. v. XL Specialty Ins. Co., 142 F.

App'x 430, 433-34 (11th Cir. 2005) (internal quotations and citations omitted). However, the Florida Supreme Court has recognized a narrow exception to this rule under which coverage may be created through promissory estoppel "where to refuse to do so would sanction fraud or other injustice." Crown Life Ins. Co. v. McBride, 517 So. 2d 660, 662 (Fla. 1987). To prove entitlement to promissory estoppel, Sanchuk and Elliott must prove by clear and convincing evidence that (1) Kastel represented that the policy provided UM coverage under load, (2) Sanchuk and Elliott reasonably relied upon that representation, and (3) because of that reliance Sanchuk and Elliott failed to their detriment to obtain alternative insurance coverage. See Universal Underwriters Ins. Co. v. Abe's Wrecker Serv., Inc., 564 F. Supp. 2d 1350, 1356 (M.D. Fla. 2008).

Great American asserts that "there is no clear and convincing evidence that Kastel said Great American's policy would provide coverage for this type of loss." (Doc. # 96 at 17). Great American points to Elliott's testimony where he states that he requested $1 million in UM coverage (Doc. # 97, Elliott Dep. at 41). Great American then concludes: "In fact, those coverages were provided if the accident occurred while

the vehicle was not under load. Thus, Kastel did not make a material representation." (Doc. # 96 at 17).

Great American further contends that Sanchuk and Elliott could not have reasonably believed the Policy provided coverage under load because "Kastel repeatedly emailed documents showing it was a non-trucking policy." (Doc. # 96 at 19; Doc. # 96-11). In addition, Great American argues that "a reasonable person would not believe the low premium paid by Sanchuk would provide complete coverage." (Doc # 96 at 19).

Great American argues that "Elliott admits Kastel never represented she was authorized to bind on Great American's behalf" a policy providing UM coverage under load (Doc. # 96 at 21), citing to Elliott's answer of "no" when asked if Kastel told him what type of insurance products she was able to sell him. (Doc. # 97, Elliott Dep. at 42). Great American asserts that "[t]he testimony was that no policy would provide coverage while the vehicle was under load. In light of that testimony, Sanchuk and Elliott did not detrimentally rely on Kastel's statements." (Doc. # 96 at 21). Finally, Great American argues that coverage could not exist even if Kastel had made the alleged representations because she had no authority to bind Great American to a policy covering independent contractors operating under load. (Id. at 21-22).

Sanchuk and Elliott contend that Great American's argument rests on "Kastel's inability to remember anything about her conversations with Sanchuk" and her "denial that certain conversations ever happened." (Doc. # 100 at 9). Although Kastel's notes indicate that she sent Elliott an updated application with $1 million in UM coverage, she testified, "I don't recall the specifics of any conversation" with Elliott regarding increasing the UM coverage limit. (Doc. # 92, Kastel Dep. at 14).

Sanchuk and Elliott argue that Elliott did request UM coverage and told Kastel that the vehicle was only driven under load. (Doc. # 97, Elliott Dep. at 41). Sanchuk and Elliott assert that "Kastel's failure to provide what the insured specifically requested is a material representation and is the basis for promissory estoppel." (Doc. # 100 at 11). As such, they seek to apply promissory estoppel to the representations made at the inception of the policy. See Aetna Cas. & Sur. Co. of Am. v. Deluxe Sys., Inc. of Fla., 711 So. 2d 1293, 1296 (Fla. 4th DCA 1998) (noting that promissory estoppel "is limited to circumstances surrounding the acquisition or procurement of the very contract of insurance in the first instance, and before any claim on that coverage has been asserted.")

As to reasonable belief of coverage, Sanchuk and Elliott argue that the insurance application they completed (Doc. # 100-1) gives no reference to non-trucking liability and they had no reason to inquire further. They contend that the emails Kastel sent referencing a non-trucking policy do not address Sanchuk and Elliott's knowledge or establish a reasonable belief that the UM coverage did not apply under load. They further argue that they simply paid the premium quoted based upon the coverage requested.

Sanchuk and Elliott assert that Elliott's deposition testimony cited by Great American (Doc. # 97, Elliott Dep. at 42) does not amount to an affirmative statement that Kastel said she could not write the policy requested. They further argue that "[t]here is no evidence presented by Great American that Sanchuk could not find a policy with UM coverage while 'under load,' only that Kim Kastel could not bind that coverage under the policy she sold." (Doc. # 100 at 16). Finally, they assert that Kastel had authority to bind Great American under its underwriting guidelines and any error she may have made occurred while she was acting on Great American's behalf.

Sanchuk and Elliott face a high bar in establishing their claim for promissory estoppel. Facts supporting such a claim

"must be shown with certainty and not taken by argument or inference, nor supplied by intendment, but clearly and satisfactorily proved." <u>Universal Underwriters</u>, 564 F. Supp. 2d at 1356. It must be noted, however, that the <u>Universal Underwriters</u> court conducted a bench trial as to the insured's claims of estoppel and policy reformation, addressing only policy interpretation on cross motions for summary judgment. It is not the province of this Court to weigh the credibility of evidence on a motion for summary judgment. Drawing all inferences from the evidence in the light most favorable to Sanchuk and Elliott, as nonmovants, the Court finds that genuine issues of material fact preclude summary judgment on the promissory estoppel claim.

###    C.    **Policy Reformation**

Great American argues that Sanchuk and Elliott have failed to introduce any evidence to support their claim for reformation of the Policy. Great American asserts that Rodholm was not privy to Elliott's conversations with Kastel, that Elliott provided Kastel with information as to what coverage he needed and that Kastel provided exactly that coverage. Great American contends that if Elliott had asked for the type of coverage sought under the Policy reformation theory, Kastel

would have told him that she could not write that type of policy.

"To state a cause of action for reformation of a contract, the complaint must allege that, as a result of a mutual mistake or a unilateral mistake by one party coupled with the inequitable conduct of the other party, the insurance contract fails to express the agreement of the parties." Romo v. Amedex Ins. Co., 930 So. 2d 643, 649 (Fla. 3d DCA 2006). An insurance policy is prima facie evidence of the intent of the parties; to have it reformed, the plaintiff must show by clear and convincing evidence that a mistake has been made. USAA Cas. Ins. Co. v. Threadgill, 729 So. 2d 476, 478 (Fla. 4th DCA 1999). "Rigorous application of the higher standard of proof in reformation cases promotes the policy that parties should not be subjected to contractual obligations to which they never agreed." Id.

Great American points to Rodholm's testimony that she heard only Elliott's side of the conversation with Kastel. (Doc. # 95, Rodholm Dep. at 33). Elliott testified that he requested $1 million in UM coverage, told Kastel about Sherwin Williams' insurance requirements and sent Kastel a copy of those requirements. (Doc. # 97, Elliott Dep. at 41, 44). Sanchuk's contract with Sherwin Williams required that Sanchuk

maintain "bobtail and deadhead" insurance from an acceptable insurance company.[2] (Doc. # 96-10 at 6). As a result, Great American asserts, Sanchuk and Elliott received the coverage they were obligated to obtain, refuting their allegation of fraud or mutual mistake.

Sanchuk and Elliott reiterate that they specifically requested UM coverage and told Kastel that Elliott only operated the vehicle while under load. "Kastel either misapprehended this fact or sold a policy directly in contravention of what the insured requested." (Doc. # 100 at 18). Sanchuk and Elliott accepted the Policy under the mistaken belief that it provided coverage while under load.

Again, Sanchuk and Elliott face a high bar in establishing their claim policy reformation but the Court finds it inappropriate to grant summary judgment as to this claim.

> The evidentiary standard of clear and convincing evidence in the context of reformation contemplates testimony from a credible witness who testifies to facts that are distinctly remembered and the details thereof narrated exactly and in due order and that the testimony be clear, direct and weighty and convincing, so as to enable you to come to a

---

[2] "Bobtail" (when the tractor is operating without a trailer) and "deadhead" (when a tractor and trailer are operating without a load) insurance refers to insurance that provides coverage when the vehicle is not under load.

clear conviction without hesitancy of the truth of the precise facts and issue.

<u>Universal Underwriters</u>, 564 F. Supp. 2d at 1356-57. As noted above, the Court in <u>Universal Underwriters</u> found no coverage under a policy reformation theory after a bench trial. This Court is not at liberty to weigh the credibility of the evidence on a motion for summary judgment. The Court finds that genuine issues of fact preclude summary judgment as to the policy reformation claim.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Counter-Plaintiff's Dispositive Motion for Partial Summary Judgment on Issue of Agency of Wellington Roemer Insurance, Inc. (Doc. # 91)is **DENIED.**

(2)  Great American's Motion for Summary Judgment (Doc. # 96) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>30th</u> day of July, 2012.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record